IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>C.W. MINING COMPANY,<br><br>      Debtor | Bankruptcy Case No. 08-20105 |
| KENNETH A. RUSHTON, Trustee,[1]<br><br>      Plaintiff / Appellee,<br><br>      vs.<br><br>STANDARD INDUSTRIES, INC.; ABM, INC.; FIDELITY FUNDING COMPANY; SECURITY FUNDING INC; and WORLD ENTERPRISES,<br><br>      Defendants / Appellants.<br><br>      vs.<br><br>AQUILA, INC.,<br><br>      Third Party Defendant / Appellee. | MEMORANDUM DECISION<br>AND ORDER<br>ON BANKRUPTCY APPEAL<br><br>Case No. 2:14-CV-272-TC<br>(Adversary Proceeding No. 09-02047) |

This appeal arises out of the bankruptcy of C.W. Mining Company, former owner of a

coal mine in Utah.  Appellants Standard Industries, Inc., ABM, Inc., Fidelity Funding Company,

Security Funding, Inc., and World Enterprises[2] have appealed a decision of the bankruptcy court

---

[1] When C.W. Mining Company was placed in involuntary Chapter 7 bankruptcy and this adversary proceeding was filed, Kenneth Rushton was the Trustee.  Now C.W. Mining Company is in Chapter 11 bankruptcy proceedings and the trustee is Gary E. Jubber.

[2] ABM, Fidelity, Security Funding, and World Enterprises loaned money to C.W. Mining Company.  They have an interest in the adversary proceeding because the bankruptcy court ruled that they did not perfect their security interests and are now unsecured creditors.

in an adversary proceeding concerning entitlement to approximately $2.8 million in coal

proceeds from the mine.  The proceeds were held by UtahAmerican Energy, Inc. (UEI), which

has since deposited the coal proceeds (UEI Proceeds or UEI Receivable) with the bankruptcy

court (UEI makes no claim to the proceeds).  The Appellants and the Appellees—the Trustee for

the Estate and Aquila, Inc. (a creditor of the Estate)—disagree about which party is entitled to

receive the UEI Proceeds.

Standard contends that it has a special interest that gives it priority in distribution of the

UEI Proceeds.  Aquila disputes that.  In the adversary proceeding below, Aquila, Inc. filed a

motion for partial summary judgment (in which the Trustee joined) seeking a declaration that the

Trustee, rather than Standard, is entitled to the UEI Proceeds for the benefit of all of the Estate's

creditors, including Aquila.  The bankruptcy court granted the motion.

Standard now appeals that ruling.  For the reasons set forth below, the bankruptcy court's

decision is AFFIRMED.

## BACKGROUND

Debtor C.W. Mining Company (CWM) was in the business of mining coal at the Bear

Canyon Mine (Mine) located on property owned by C.O.P. Coal Development Company (COP).

In March 1997, COP and CWM entered into a coal operating agreement ("Operating

Agreement") which formally granted CWM the right to mine the Bear Canyon Mine.  (The

agreement was a formality because CWM, through a verbal agreement with COP, had been the

sole operator of the Mine since the early 1980s.)

While CWM was mining the coal, Standard Industries, Inc. was CWM's exclusive broker

of the coal.  Standard had been acting as broker for years based on a verbal agreement with

CWM that was governed by their course of dealings.  On March 5, 2007, CWM and Standard entered into a written coal sales agency agreement ("Sales Agency Agreement").  According to that agreement, CWM assigned to Standard legal and equitable title to coal mined by CWM (the title vested the instant the coal was severed from the seam in the Mine) and assigned the proceeds as well.  It then appointed Standard as its exclusive sales agent for coal produced from the Mine.

Later, when CWM needed money for capital improvement and operating expenses, it entered into an additional agreement with Standard, in which Standard supposedly agreed to purchase coal from CWM before CWM actually mined the coal.  In March 2001, CWM and Standard memorialized their agreement in the "Advance Payment Agreement" quoted in part as follows:

> Standard may from time to time make advanced payments to or on behalf of CWM for the purchase price of coal not yet mined, as the parties may mutually agree. . . .  Standard's payments to CWM are advance payments for purchases of coal not yet mined, for which Standard shall have full legal and equitable title to the coal as it is mined by CWM, and shall not be construed as a mere loan to CWM.

(Advance Payment Agreement Section 3.)

On November 28, 2007, CWM agreed in writing to supply UEI with coal (the "UEI Agreement").  In that agreement, the parties stated that although the coal was mined by CWM, the coal proceeds were assigned to Standard and, accordingly, UEI agreed to pay Standard directly for the coal.

> Whereas [CWM, the seller] has assigned all right and title to the proceeds of this contract to Standard Industries, [CWM] instructs [UEI, the buyer,] to pay invoiced amounts to Standard Industries.  Standard Industries shall submit invoices to [UEI] weekly, for shipments made during that week.

(UEI Agreement Section 10.1.)  At the same time, CWM and Standard created and signed the

3

"Assignment of Coal Sale Contract Proceeds" (the "Assignment Agreement"), which assigned the proceeds of the UEI Agreement to Standard.  As coal was mined by CWM, Standard sent invoices to UEI, who then payed Standard directly for the coal.

In January 2008, an involuntary Chapter 11 bankruptcy petition was filed against CWM. Near the end of 2008, that bankruptcy matter was converted to a Chapter 7 liquidation proceeding.

In the bankruptcy proceedings, Standard asserted that it was the owner of the UEI Proceeds and cited to the Sales Agency Agreement, the Advance Payment Agreement, the Assignment Agreement, and the UEI Agreement as evidence of its interest.  The Trustee claimed that the Estate was entitled to the UEI Proceeds.

To resolve the dispute, the Trustee initiated the underlying adversary proceeding.  U.S. Bankruptcy Court Judge Judith Boulden was assigned to the case at the time (the case was later reassigned to U.S. Bankruptcy Court Judge Kimball Mosier, whose order is now on appeal before this court).  The Trustee filed a motion for partial summary judgment in front of Judge Boulden in which Aquila joined.

One of the issues concerned the nature of the Advance Payment Agreement and Sales Agency Agreement.  In his motion, the Trustee contended that the Advance Payment Agreement and Sales Agency Agreement did not give Standard a special interest in the UEI Proceeds because the agreements were loan agreements disguised as security agreements assigning an interest in the proceeds.

The bankruptcy court (Judge Boulden) found that the agreements were unambiguous and subject to interpretation as a matter of law.  The court then held that the agreements, including

4

the Assignment Agreement, granted Standard a security interest in the UEI Proceeds.  Judge

Boulden also ruled that

> the **Assignment Agreement** is . . . governed by the UCC [Uniform Commercial
> Code] and that **an "account" was created** between the [CWM] and UEI and then
> **pledged to Standard.**  Under the terms of the UEI Agreement, **[CWM] had a
> right to payment** from UEI for the delivery of coal.  **This right to payment
> qualifies as an account under the UCC** which defines an "account" as "a right
> to payment of a monetary obligation, whether or not earned by performance:
> (i) for property that has been or is to be sold."  Article 9 § 109(1)(c), which
> established the scope of Article 9, specifically indicates that **Article 9 applies to
> the sale of accounts**. . . .

(Am. Mem. Dec. (Doc. No. 172 in underlying adversary proceeding) at 25 (emphasis added).)

But upon reviewing the UCC-1 Financing Statements filed by the Appellants, the

bankruptcy court found that they were "seriously misleading."  By that ruling, Standard and the

other Appellants lost any secured status they may have held because they failed to perfect their

security interests under the UCC.  (See id. at 26-28.)  The bankruptcy court then awarded the UEI

Proceeds to the Trustee on behalf of the Estate.

Standard and the other Appellants appealed portions of Judge Boulden's order.  They did

not challenge the rulings that UCC Article 9 applied to the Assignment Agreement or that none

of the exceptions in Article 9 apply in this case.  (See Br. of Appellants, Doc. No. 15 in Dist. Ct.

of Utah Case No. 2:10-cv-271-TS, at 6-8.)  But they did challenge the ruling that the security

interests were not perfected under the UCC.

U.S. District Judge Ted Stewart (originally assigned to this case) reviewed the appeal and

affirmed the ruling about perfection of security interests.  But, contrary to the bankruptcy court's

ruling, he found that the Sales Agency Agreement and the Advance Payment Agreement were

ambiguous and that factual findings were necessary to determine the contracting parties' intent

(that is, whether the agreements were actually loan agreements disguised as assignments of security interests).  Judge Stewart remanded the contract issue to the bankruptcy court for fact finding.

Before the bankruptcy court had a chance to make factual determinations about the contracting parties' intent, Aquila filed a motion for partial summary judgment regarding entitlement to the UEI Proceeds.  In its motion, Aquila approached the issue of UEI Proceeds entitlement from a different angle.  According to Aquila, as a matter of law and law of the case, the Trustee is entitled to the UEI Proceeds for the benefit of the unsecured creditors of the Estate. Aquila argued that the bankruptcy court did not need to make factual findings about the agreements because "[w]hatever this Court decides on remand, Standard will not be entitled to assert a direct claim against the UEI Receivable."  (Aquila Mot. Partial Summ. J. (Doc. No. 309 in Adversary Proceeding 09-02047) R. 2690.)  That is, Standard was in no better position than the unsecured creditor because the assignment interest had not been perfected.

Judge Mosier agreed and awarded the proceeds to the Trustee on behalf of the Estate. Standard and the other Appellants (whose interests were nullified by the perfection ruling) appealed to this court.

## ANALYSIS

### Jurisdiction and Standard of Review

This court has jurisdiction to review the appeal of the bankruptcy court's March 31, 2014 Memorandum Decision under 28 U.S.C. § 158(a).  See also Fed. R. Bankr. P. Pt. VIII (rules governing appeals of bankruptcy court decisions to district courts).  On appeal from a bankruptcy court's decision in an adversary proceeding, the court reviews questions of law de novo and

6

questions of fact under the clearly erroneous standard.  <u>Osborn v. Durant Bank & Trust Co.</u> (<u>In re</u>

<u>Osborn</u>), 24 F.3d 1199, 1203 (10th Cir. 1994), <u>abrogated in part on unrelated grounds by</u>

<u>Eastman v. Union Pac. R.R.</u>, 493 F.3d 1151, 1156 (10th Cir. 2007).

**Issue on Appeal**

The Appellants present a series of issues in their opening brief, but as the Trustee and

Aquila point out, the issue is simple: which party has the right to the UEI Receivable?  In other

words, did the bankruptcy court err in holding, as a matter of law, that because Standard and the

other Appellants did not perfect their interests in the UEI Receivable and that Standard presented

insufficient evidence that Standard had an independent account with UEI, the Trustee is entitled

to the UEI Receivable for the benefit of the Estate's creditors?[3]

**Deciding the Remanded Issue Would Not Change the Result (that the Trustee is
Entitled to the UEI Proceeds).**

As noted above, Standard did not challenge the rulings that UCC Article 9 applied to the

Assignment Agreement and that none of the exceptions in Article 9 apply in this case.  (<u>See</u> Br.

of Appellants (Doc. No. 15 in Dist. Ct. of Utah Case No. 2:10-cv-271-TS) at 6-8.)  And the

district court affirmed Judge Boulden's ruling that the security interest was not perfected under

the UCC.  Those unchallenged (or affirmed) findings are now the law of the case and apply to the

current appeal.

---

[3]Standard emphasizes that the Sales Agency Agreement gave it ownership of the coal in
the Mine.  But that point is irrelevant.  The issue concerns $2.8 million in proceeds that the
bankruptcy court has adjudicated is an account subject to the UCC.  Whether Standard owns the
coal, mined or unmined, is of no matter here.  The question is whether the UEI Proceeds (not the
coal), an account under the UCC, are to be given to Standard or to the Trustee on behalf of the
Estate.

> [A] legal decision made at one stage of litigation, unchallenged in a subsequent
> appeal when the opportunity to do so existed, becomes the law of the case for
> future stages of the same litigation, and the parties are deemed to have waived the
> right to challenge that decision at a later time.  Other circuit courts of appeal have
> recognized that this rule is necessary to the orderly conduct of litigation and
> ensures that a party which fails to challenge a ruling in a first appeal does not
> stand better as regards the law of the case than one who had argued and lost.

Concrete Works of Colorado, Inc. v. City & County of Denver, 321 F.3d 950, 992-93 (10th Cir.

2003) (internal citations and quotation marks omitted).

It is settled that (1) Article 9 applies to the Assignment Agreement between Standard and

CWM, and (2) Standard's financing statement was "seriously misleading" and did not comply

with the notice-filing requirements of UCC Article 9.

Turning to the issues currently before the court, the court agrees with Aquila and the

Trustee that regardless of whether the court were to find that Standard and CWM intended to

enter into a valid assignment or intended to enter into a loan agreement disguised as an

assignment, both types of interest are subject to Article 9 requirements of the UCC.  And because

the bankruptcy court (affirmed by the district court) held that Article 9 requirements were not

satisfied, the result on remand would be the same: the proceeds go to the Trustee on behalf of the

unsecured creditors of the Estate.

Aquila demonstrates this by describing the two possible outcomes on remand.

In the first scenario, assuming that the agreements resulted in a genuine assignment, the

Trustee gets the UEI Proceeds.  As Judge Boulden held, that assignment was subject to UCC

filing requirements—i.e., Utah's UCC requires that a security agreement transferring an account

receivable be perfected through proper filing with the Utah Department of Corporations and

Commercial Code before it is effective against third parties such as the Trustee.  See Utah Code

Ann. §§ 70A-9a-201(1); 70A-9a-301.

Judge Boulden then held that none of the Article 9 exceptions apply in this case.  (Id. at 26-27.)  Judge Boulden also ruled that the UCC financing statement filed by Standard in this case was ineffective and "seriously misleading" and so Standard had not properly perfected its security interest.  (Id. at 27, 28.)

The affirmed ruling—that Standard does not have a properly perfected security interest—establishes as a matter of law of the case that the Trustee is entitled to avoid the security interest and take the UEI Proceeds on behalf of the Estate.

> For purposes of determining the rights of creditors of, and purchasers for value of an account or chattel paper from, a debtor that has sold an account or chattel paper, while the buyer's security interest is unperfected, the debtor is deemed to have the rights and title to the account or chattel paper identical to those the debtor sold.

Utah Code Ann. § 70A-9a-318 (emphasis added).  See also Barkley Clark and Barbara Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 10.04[2][F][iv] ("[A] debtor that has sold an account, while the buyer's security interest is unperfected, is deemed to have 'rights and title' to the account 'identical to those the debtor sold.'").  The bankruptcy court's order avoiding Standard's interest in the UEI accounts receivable "made [Standard] an unsecured creditor against the bankruptcy Estate and permitted the trustee to collect [the UEI] accounts receivable."  Ta Chong Bank Ltd. v. Hitachi High Techs. Am., Inc., 610 F.3d 1063, 1067 (9th Cir. 2010).  In other words, because Standard failed to perfect its interest in CWM's accounts, even before Standard's interest was avoided by the bankruptcy court under 11 U.S.C. § 544(a), CWM's rights in the UEI Proceeds were identical to those it assigned to Standard.

In the second scenario, even if the court finds that the parties intended that Standard be a

9

secured creditor (by lending money to CWM), the law of the case equally forecloses Standard's argument that it entitled to the UEI Proceeds.  The UCC applies to a security interest held by a secured creditor and requires perfection of that security interest before it is valid and enforceable against third parties.  Utah Code Ann. §§ 70A-9a-201(1); 70A-9a-301.  As noted above, because the interest was not perfected, the interest remained the same in CWM's hands, and then, upon bankruptcy, in the Trustee's hands.

### Other Issues Raised by the Appellants in their Opening Brief

The remaining issues identified by Standard and the rest of the Appellants in their opening brief[4] fail on the merits.

First, Appellants contend that bankruptcy court Judge Mosier disregarded instructions on remand when he issued the order now being appealed.  They say the ruling deprived them of the right to a trial on the issue of whether the Sales Agency Agreement and the Advance Payment Agreement were assignments or loans disguised as assignments.  But once the bankruptcy court adopted the premise set forth in Aquila's motion for partial summary judgment, the factual question about intent was moot.

Second, Appellants claim that the bankruptcy court erred by deciding questions of fact on

---

[4]In their opening brief, the Appellants reiterate their challenge to the decision that they had not perfected their security interests.  But they also recognize that the issue was decided on the first appeal and may not be raised in this appeal.  According to the Appellants, they are simply ensuring that their "appeal rights are properly preserved."  (Appellants' Opening Br. (Do. No. 15) at 13 n.10.)  Similarly, the Appellants contend that Judge Boulden's order was "impermissibly broad" because its language "purports to avoid 'all' security interests in 'any property of the estate' claims by the Objectors [the Appellants]. . . ."  (Br. of Appellants (Doc. No. 15) at 20.)  This issue was also affirmed by Judge Stewart and is not properly before the court.

summary judgment.  But, again, the bankruptcy court did not address the facts raised by the remanding court.  The bankruptcy court assumed certain facts (one set that was favorable to Standard's position) and ruled as a matter of law that the facts did not matter because the law of the case mooted the issue.  Given the procedural posture of the case, there was no error.

### Invoices Are Not Evidence of an Independent Account Between UEI and Standard.

To avoid the perfection issue, Appellants further contend Standard purchased the coal from CWM and then sold the coal to UEI under a separate account (not subject to UCC filing requirements), as evidenced by invoices to UEI.  At a minimum, they contend that the invoices are underlined evidence of an account and so an issue of fact about entitlement to the proceeds has been created, making summary judgment improper at this stage.  According to Standard,

> [c]ourts across the country have held that invoices constitute prima facie evidence of the existence and amount of an account.  In some cases, invoices can be viewed as contracts themselves, containing the "final expression" of the terms of the parties' transaction.

(Appellants' Br. at 9.)  But the case law cited by the Appellants does not support their contention. (See Trustee's and Aquila's Br. (Doc. No. 21) at 10-11.)

Aquila and the Trustee concede that the invoices can be evidence of the existence of an account but that such evidence alone does not present a genuine issue of material fact about whether an account exists between Standard and UEI.  The most support that Standard can muster from the case law is a rule that invoices may be evidence of an agreement.  But invoices do not, in and of themselves, constitute a contractual arrangement.

> Accounts receivable are most often evidenced by the generation of an invoice. Invoices are statements which are nothing more than pieces of paper reflecting a record of a transaction.  They are not transferable in the ordinary course of business.  Invoices cannot be endorsed or transferred as a means of payment.

11

Mere possession of an invoice does not have any legal significance or evidence a right to payment.

Wawel Sav. Bank v. Yale Factors NJ LLC (In re Jersey Tractor Trailer Training), 2010 Bankr. LEXIS 3126 *9 (Bankr. D.N.J. 2010).  The invoices issued by Standard are unilateral statements by Standard.  Under Article 9 of the UCC, the term "account" means "a right to payment of a monetary obligation . . . (i) for property that has been or is to be sold."  Utah Code Ann. § 70A-9a-102(2)(a)(i).  An invoice does not create a right to payment; it merely requests payment on an account.

Standard unconvincingly points to the UEI Agreement as further evidence of an independent agreement between Standard and UEI.  The UEI Agreement does not add any weight to the invoices.  First, the only portion of the UEI Agreement discussing Standard is language assigning an interest to Standard (an interest that would be subject to UCC perfection requirements).  Because that interest was not perfected, the Trustee is entitled to avoid the security interest and take the UEI Proceeds on behalf of the Estate.

For purposes of determining the rights of creditors of, and purchasers for value of an account or chattel paper from, a debtor that has sold an account or chattel paper, while the buyer's security interest is unperfected, the debtor is deemed to have the rights and title to the account or chattel paper identical to those the debtor sold.

Utah Code Ann. § 70A-9a-318 (emphasis added).

Second, the contract for the coal proceeds was between CWM and UEI.  Standard was not a party to that agreement.  And because Standard's interest was not perfected, CWM held the rights and title to the UEI Receivable.  The appointment of a bankruptcy trustee to handle the CWM Estate on behalf of creditors allows the Trustee to avoid Standard's asserted right to the

UEI Receivable.

## **ORDER**

For the foregoing reasons, the March 31, 2014 Memorandum Decision of the United

States Bankruptcy Court for the District of Utah in Adversary Proceeding No. 09-2047 in In re

C.W. Mining Company, Bankruptcy No. 08-20105, is AFFIRMED.

DATED this 8th day of May, 2015.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge

13